IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GREGORY A. GEANES,  )
                                        Plaintiff,  )
      vs.  )
                                                 )
ANDREW M. SAUL, Commissioner,  )
Social Security Administration,  )
                                                 )   No. 3:20-cv-0057-HRH
                              Defendant.  )

<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Plaintiff Gregory A. Geanes has timely filed his opening brief[1] to which defendant, Andrew M. Saul, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

<u>Procedural Background</u>

On July 8, 2014, plaintiff filed an application for disability benefits under Title II, alleging that he became disabled on July 8, 2014. Plaintiff alleges that he is disabled due to his prostate and right shoulder. Plaintiff's application was denied initially and he requested

---

[1]Docket No. 12.

[2]Docket No. 13.

a hearing. After an administrative hearing on January 27, 2016, an administrative law judge (ALJ) denied plaintiff's application. On February 28, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's May 4, 2016 unfavorable decision. Plaintiff sought judicial review and on February 19, 2019, the court remanded the matter for further proceedings. On remand, an administrative hearing was held on October 24, 2019. After this administrative hearing, the ALJ again denied plaintiff's application. Written exceptions were bypassed, thereby making the ALJ's December 27, 2019, decision the final decision of the Commissioner. On March 6, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on May 26, 1958. He was 56 years old on the alleged onset of disability date. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a merchandiser, a newspaper delivery person, a pizza delivery person, a stocker, a parts counter person, a customer service support tech, a ramp service worker, a reservation agent, and a travel agent.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirement of the Social Security Act through June 30, 2023."[3]

The ALJ next applied the five-step sequential analysis used to determine whether an

---

[3]Admin. Rec. at 462.

individual is disabled.[4]

At step one, the ALJ found that plaintiff "engaged in substantial gainful activity during the following periods: January 1, 2017 to present. . . ."[5] The ALJ found that from 2014-2016, although plaintiff was working, he did not earn amounts that would constitute substantial gainful activity.[6] However, the ALJ found that "beginning in 2017, the claimant's monthly earnings began to exceed the presumptive monthly minimums for substantial gainful

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 462.

[6]Admin. Rec. at 462.

activity."[7]  "Because there is not a 12-month period after January 1, 2017, in which the claimant did not perform substantial gainful activity," the ALJ found that plaintiff had "not been disabled since this date."[8]

The ALJ's remaining findings addressed the time that plaintiff did not engage in substantial gainful activity, namely 2014-2016.[9]

At step two, the ALJ found that plaintiff had "the following severe impairment: benign prostatic hypertrophy. . . ."[10]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009).  The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) subject to the following. He can stand up to 5[] hours, walk up to 3[] hours, and sit up to 6[] hours in a normal workday; occasional climbing of ramps and

---

[7]Admin. Rec. at 462.

[8]Admin. Rec. at 463.

[9]Admin. Rec. at 463.

[10]Admin. Rec. at 463.

[11]Admin. Rec. at 463.

stairs, stooping, kneeling, crouching, and crawling; frequent balancing; no climbing of ladders, ropes or scaffolds; he should avoid even moderate exposure to unprotected heights and hazardous machinery; and he can have frequent operational control of moving machinery.[12]

The ALJ found plaintiff's pain and symptom statements less than credible because of "[i]nconsistent statements," because plaintiff had a tendency to exaggerate his symptoms, and because there is "a lack of corresponding objective clinical findings."[13]

The ALJ gave Dr. Lebeau's opinion significant weight.[14] The ALJ gave some weight[15] to the opinion of Dr. Logan.[16] The ALJ also gave some weight[17] to Dr. Califano's

---

[12]Admin. Rec. at 463-464.

[13]Admin. Rec. at 465.

[14]Admin. Rec. at 465. Dr. Lebeau's opinion is discussed below in detail.

[15]Admin. Rec. at 466.

[16]On July 11, 2016, Dr. Logan, one of plaintiff's treating urologists, wrote that

> it is apparent that [plaintiff's] symptoms have been refractory to treatment thus far. It has resulted in significant disruption to not only his quality of life, but also to his ability to work, as he frequently needs to return to the restroom multiple times per hour. It is my assessment that while several treatment options have been ineffective, all options have not been exhausted to date. Mr. Geanes expresses his willingness to continue to work through this issue, and understands that trial of other treatment options will take time to determine if they are effective. In the interim, temporary medical disability is advisable. Please give him strong consideration for temporary medical disability.

Admin. Rec. at 696.

[17]Admin. Rec. at 467.

opinion.[18]  The ALJ gave little weight[19] to Dr. Brown's opinion.[20]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as an outside deliverer, or a cleaner II."[21]

---

[18]On May 20, 2015, Dr. Califano, one of plaintiff's treating urologists, wrote that plaintiff

> has been a patient of mine for approximately two years. Mr. Geanes has undergone multiple procedures and has been on oral medications for severe urinary urgency. He has been refractory to all treatment modalities and continues to use the restroom every 20-30 minutes. This has caused him significant difficulties in the work force and limits his ability to maintain a steady income. At this time I do not see any signs of these symptoms improving.

Admin. Rec. at 355.

[19]Admin. Rec. at 466.

[20]On February 1, 2016, Dr. Brown of Alaska Urology wrote that plaintiff

> has a very complicated urologic history. He has been managed by urologists for an extended period of time. He has recently established care with me. I have had a chance to review his previous urological testing and treatments to date. He is bothered by severe lower urinary tract symptoms which are most likely related to an enlarged prostate. He has tried multiple medical and surgical therapies without significant improvement. Mr. Geanes states these symptoms restrict his ability to perform job duties of his recent employment. I can appreciate that such urinary symptoms can become a hindrance to employment without significant concessions by his employer.

Admin. Rec. at 455.

[21]Admin. Rec. at 467.

The ALJ thus concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from July 8, 2014, through the date of this decision. . . ."[22]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[22]Admin. Rec. at 469.

Discussion

Plaintiff first argues that the ALJ erred at step one. At step one, the ALJ must consider whether the claimant has engaged in substantial gainful activity. "Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). "The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself." Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990). "The mere existence of earnings over the statutory minimum is not dispositive." Id. "However, there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines." Id. "A claimant may rebut the presumption that he was engaged in SGA at a prior job by presenting evidence that he was employed under 'special conditions' which '[took] into account his impairment'—for example, . . . the claimant was 'allowed to work irregular hours or take frequent rest periods[.]'" Sylvester D. v. Berryhill, Case No. 5:18-cv-00192-KES, 2018 WL 6619744, at *2 (C.D. Cal. Dec. 18, 2018) (quoting 20 C.F.R. § 404.1573(c)).

Here, the ALJ found that plaintiff had engaged in substantial gainful activity starting on January 1, 2017. The ALJ found that "beginning in 2017, the claimant's monthly earnings began to exceed the presumptive monthly minimums for substantial gainful activity."[23] The ALJ explained that plaintiff was working two part-time jobs, one for Select Media

---
[23]Admin. Rec. at 462.

merchandising magazines for 10-12 hours per week, and one for Enterprise Rent-a-Car detailing and cleaning rental vehicles for up to 24 hours per week.[24] The ALJ found that plaintiff was earning $1,657.33 per month at these two jobs, "which is . . . above the monthly minimum of $1,220 for the current calendar year."[25] The ALJ found that plaintiff had not rebutted the presumption that he was engaging in substantial gainful activity because plaintiff had "not presented any evidence from his employer that his productivity and efficiency at either of his jobs are below those generally tolerated for an unimpaired individual performing the same work" and that "[i]n particular, he ha[d] not submitted any evidence that his need for restroom breaks is a significant accommodation to the performance of his job that would not be available to other employees."[26] The ALJ also found that plaintiff had "not presented any evidence that he has significant, impairment-related work expenses to be able to perform the duties of his jobs, or that he receives a subsidy for these expenses, which would otherwise reduce his earnings below substantial gainful activity minimums."[27]

Plaintiff argues that the ALJ erred in finding that there was no evidence that he was allowed extra breaks at his jobs. Plaintiff testified that when he was hired by Enterprise, he "told them about my condition, that I need access to the restroom whenever possible, so she

---

[24]Admin. Rec. at 462.

[25]Admin. Rec. at 462.

[26]Admin. Rec. at 462.

[27]Admin. Rec. at 462-463.

agreed that that would be okay[.]  The type of work I was doing, she said, you know, it would be okay if I had to go to the bathroom, I could[.]"[28]  Plaintiff argues that this was sufficient evidence to establish that he was only able to work with an accommodation, or under special conditions, and thus the ALJ erred at step one in determining that he had engaged in substantial gainful activity since January 1, 2017.

Defendant argues that plaintiff's testimony, by itself, is not sufficient to support a finding that he could only perform substantial gainful activity under special conditions. Defendant argues that what is lacking here is any corroborating evidence from plaintiff's employer.

But plaintiff argues that defendant's suggestion that corroborating evidence is required is contrary to defendant's policy.  SSR 82-62 provides that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."  Plaintiff argues that this means that his testimony should be sufficient to show that he was working under special conditions.

SSR 82-62 pertains to a claimant's ability to do his past relevant work, not whether the work the claimant is currently doing is being performed under special conditions.  The question here is whether or not there was sufficient evidence that plaintiff was working under special conditions.  As to that question, 20 C.F.R. § 404.1573(c) provides that the ALJ "may

---

[28]Admin. Rec. at 504-505.

find that your work does not show that you are able to do substantial gainful activity." But, the regulation also provides that "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." Id. In other words, the ALJ is not required to find that a claimant has not engaged in substantial gainful activity merely because the work at issue is being performed under special conditions.

Here, the evidence is unclear as to whether plaintiff's work for Enterprise was performed under "significant" accommodations or special conditions. Plaintiff has not rebutted the presumption that he was engaged in substantial gainful activity beginning in January 2017. Thus, the ALJ did not err at step one.

Plaintiff next argues that the ALJ erred in not including a need for additional breaks in his RFC. The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) subject to the following. He can stand up to 5[] hours, walk up to 3[] hours, and sit up to 6[] hours in a normal workday; occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; frequent balancing; no climbing of ladders, ropes or scaffolds; he should avoid even moderate exposure to unprotected heights and hazardous machinery; and he can have frequent operational control of moving machinery.[29]

This RFC was largely based on Dr. Lebeau's opinion, to which the ALJ gave significant weight. Dr. Lebeau testified as a medical expert at the 2019 administrative hearing. He opined that plaintiff would be able to

---

[29]Admin. Rec. at 463-464.

-11-

> lift 50 pounds occasionally, also 20 pounds occasionally, 10 pounds frequently, carrying would be the same. Next we have sit, stand, walk. He has no obstruction to sitting. It's conceivable he would need an extra break or two during the workday for urination, but I would say two hours at a spell, and let's say, six hours in the course of a workday for sitting. . . . I think he could stand for an hour, and in the course of a workday let's say five hours. Then walking, again an hour and let's say three [hours total.] Use of his hands, he's just not restricted. . . . [O]peration of foot controls, that's not limited in either leg. Then . . . climbing stairs and ramps is occasionally. Now ladders, ropes, or scaffolds I think is occasionally also. . . . And then balance itself would be frequently. Now, . . . kneel, crouch, stoop, and crawl, . . . those would all be occasionally. . . . Then environmental limitations, you have unprotected heights, that's occasional; moving mechanical parts, that would be frequently; operating a motor vehicle; that's continuously. And then . . . humidity and wetness, . . . dust, odors, fumes, and so forth, cold, heat, and vibrations, I think all of those would be not limited or continuous basis."[30]

Although Dr. Lebeau had testified that it was "conceivable [plaintiff] would need an extra break or two during the workday for urination,"[31] the ALJ concluded that Dr. Lebeau "did not find that the medical evidence supported the frequency of restroom breaks that the claimant has alleged he required or requires."[32] Plaintiff argues that this conclusion makes no sense and is unsupported in light of Dr. Lebeau's testimony that plaintiff would conceivably need one to two extra breaks per day. Thus, plaintiff argues that the ALJ's RFC was flawed because it did not include a requirement for extra breaks.

---

[30]Admin. Rec. at 490-492.

[31]Admin. Rec. at 490-491.

[32]Admin. Rec. at 465.

-12-

Plaintiff argues that this error was not harmless because if such a requirement were included in his RFC, all work would be precluded, as testified to by the vocational expert at the 2019 administrative hearing. Kimberly Mullinax testified that "[t]he need for breaks, in addition to what's normally provided, is not tolerated on a persistent or ongoing basis."[33] Plaintiff argues that the ALJ ignored this testimony from Mullinax because the ALJ failed to consider whether he could only work if he were given an accommodation such as Dr. Lebeau suggested.

Plaintiff argues that it is particularly troubling that the ALJ ignored Dr. Lebeau's testimony about the need for additional breaks, given that the ALJ was considering what plaintiff could do in terms of work for the period of 2014-2016 and in the ALJ's prior decision (the 2016 decision which was reversed by the court in 2019), the ALJ's RFC included a requirement of "two extra breaks for 15 minutes each during a normal 8-hour workday."[34] Plaintiff argues that nowhere in the current decision under review did the ALJ explain why the extra break requirement was omitted. Plaintiff suggests that defendant cannot have it both ways, that he cannot argue that the current RFC, which does not include extra breaks, is supported by substantial evidence when he previously argued that the original RFC, which did include extra breaks, was supported by substantial evidence. Plaintiff argues that the evidence either supports a need for extra breaks or it does not.

---

[33]Admin. Rec. at 508.

[34]Admin. Rec. at 27.

Defendant, however, argues that Dr. Lebeau's testimony does not support plaintiff's contention that he required extra breaks. Defendant acknowledges that Dr. Lebeau testified that it was "conceivable" that plaintiff might need an "extra break or two during the workday for urination."[35] But defendant argues that this was an equivocal statement about what Dr. Lebeau thought might be possible, not a "specific imperative[]" that this was a limitation that plaintiff required. Rounds v. Comm'r Social Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). Given that Dr. Lebeau testified that plaintiff could sit for "two hours at a spell[,]"[36] defendant argues that it was reasonable for the ALJ to conclude that Dr. Lebeau's testimony did not support a need for extra bathroom breaks.

The ALJ's RFC was flawed. The ALJ gave great weight to Dr. Lebeau's opinion as to plaintiff's functional capacity and Dr. Lebeau testified that it was "conceivable" that plaintiff would require one to two extra breaks per day.[37] The ALJ stated that Dr. Lebeau "did not find that the medical evidence supported the frequency of restroom breaks that the claimant has alleged he required or requires."[38] But, Dr. Lebeau never testified that the medical evidence did not support the frequency of breaks that plaintiff alleged he required, perhaps because, as to the time between 2014 and January 1, 2017, plaintiff's doctors

---

[35]Admin. Rec. at 490-491.

[36]Admin. Rec. at 491.

[37]Admin. Rec. at 490-491.

[38]Admin. Rec. at 465.

-14-

repeatedly noted plaintiff's issue with frequency.[39]  Indeed, there is substantial evidence in the record of plaintiff's urinary urgency problem prior to January 1, 2017.  Dr. Lebeau's testimony regarding extra breaks was equivocal and somewhat ambiguous, but that does not mean that the ALJ should have just ignored this testimony.  Rather, the ALJ should have asked Dr. Lebeau, who was testifying at the administrative hearing, to clarify whether plaintiff required extra breaks or not.  "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1986)).  The ALJ failed to fulfill this duty here.

Because the ALJ erred as to plaintiff's RFC, the court must consider whether to remand this matter for an immediate award of benefits or for further proceedings.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).  "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  Id.  The court follows a three-step analysis to determine whether a remand for benefits would be appropriate.  "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'"  Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th

---

[39]See e.g., Admin. Rec. at 342, 390-391, 393, 433.

Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

A remand for further proceedings is appropriate here because clarification is needed as to plaintiff's RFC: whether plaintiff required additional breaks during the relevant time, which is limited to the period between plaintiff's alleged onset date and December 31, 2016. That clarification may alter the formulation of the ALJ's hypothetical regarding plaintiff's functional capacity.

### Conclusion

The Commissioner's final decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 27th day of October, 2020.

/s/ H. Russel Holland
United States District Judge

-16-

Case 3:20-cv-00057-HRH   Document 15   Filed 10/27/20   Page 16 of 16